TRUMAN M. DODSON et al.

*v.*

JAMES SEVERS et al.*

BIRD, V. C.

The testimony in this case shows that the relation of parent and child existed between the grantor and grantee. There is an

---

* By a clerical error the decision reported in *8 Dick. Ch. Rep. 633*, is stated to be on appeal from a decree on an opinion reported in *7 Dick. Ch. Rep.* The opinion upon which the decree in the cause in chancery was based is now published.—REP.

20

utter absence of any proof that the grantee was ever emancipated. It is very manifest that the relation, which existed from the time the child was one year of age until she became twenty-one, continued unbroken till her death. This being the case, the question is, was her grandfather or grantor under any obligations to the grandchild, his grantee, at the time of the execution of the deed; and if not, then was the deed, which passed the title to the grantee, valid as to the grantor's existing creditors? Not only is there nothing to show any emancipation or change of relation, but there is nothing to show any contract or understanding that the grantee was working for wages, or with the expectation of compensation of any kind. As I understand the authorities, they are very clear to the effect that, under such circumstances, no legal or equitable claim exists.

In *Ridgeway* v. *English, 2 Zab. 409*, the action was brought by a married daughter and her husband against the executors of her father to recover for services which were alleged to have been performed for her father in his lifetime, and after the daughter arrived at her majority. The court said: "When a daughter, after arriving of age, continues to reside in her father's family, supported by him, and performing useful services in return, the law will not, except under special circumstances, imply a promise on the part of the father to pay for such services. If she demand pay, it is incumbent on her to show affirmatively that compensation was to be made, and that it was so expected by both parties, or that the services were performed under such circumstances as that the expectation was reasonable and proper."

In *Updike* v. *Titus, 2 Beas. 151*, the law was thus stated: "The law implies no promise to pay for services rendered by members of a family to each other, whether by parents, children or other relatives. The rule is well settled that a mere moral obligation constitutes no legal consideration for a contract." See, also, *Prickett* v. *Prickett, 5 C. E. Gr. 478*. This case shows that there must be either an agreement binding between the parties, or such circumstances as would justify the court in coming to the conclusion that compensation was intended on the one side

and expected on the other, without which the services would not have been rendered.

But, in effect, it has been maintained that this conveyance can be supported even as against creditors of the grantor, because from all of the circumstances of the case the grantor was under obligations to make such conveyance. In other words, the services having been rendered by the grantee after as well as before she became of age, and the deed having been delivered, the presumption is that it was for such good and valuable consideration as that a court of equity will not feel itself bound to disturb it. This has been the practice of the court.

In *Gardner* v. *Schooley, 10 C. E. Gr. 150,* it was claimed that services had been rendered to a parent by his daughter. To compensate her he gave her a mortgage upon his real estate. This court declared the mortgage to be void as to creditors, upon the principles stated in the authorities above cited.

All of these cases, as well as many others, were referred to approvingly in what will doubtless be considered a leading case upon the subject—*Disbrow* v. *Durand, 25 Vr. 343.* The doctrine, as previously declared whenever the question has been presented, was in this case unequivocally pronounced by the chancellor, in delivering the opinion for the court of errors and appeals. He said : "Ordinarily, where services were rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them, but where the services are rendered by members of a family, living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover for the services the plaintiff must affirmatively show either that an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason of this exception to the ordinary rule is that the household family relationship is presumed to abound in reciprocal acts of kindness and good will, which tend to the mutual comfort and convenience of the family, and are gratuitously performed ; and where that relationship appears, the ordinary implication of a promise to pay for services does not

---

Dodson *v.* Severs.

---

arise because the presumption which supports such implication is nullified by the presumption that between members of a household services are gratuitously performed. The proof of the service, and as well of the family relation, leaves the case in equipoise, from which the plaintiff must remove it or fail." He also says : " It rests upon the idea of the mutual independence of those who are members of one immediate family, and such a family may exist though composed of remote relations, and even of persons between whom there is no tie of blood."

. Hence, whenever or wherever a family or domestic relation exists, whether composed of kindred or not, the presumption is one of mutuality, or of services upon the one hand and of support upon the other, which presumption will continue until overcome by proof, express or clearly implied, of an agreement or understanding to the contrary. The answer admits that the grantee " was a daughter of the said James Taylor (who was the grantor), and from her childhood until his death had resided with the said James Taylor as a member of his family, and was supported, maintained and educated by him."

The testimony not only fully sustains this admission, but shows very conclusively that there was no change of relationship, or that there was any agreement or understanding whatever between the parties creating any other obligation.

Reaching this conclusion, it seems to follow inevitably that the conveyance of Mr. Taylor to his grandchild must be decreed to have been voluntary, and consequently subject to the claims of existing creditors. The learned counsel for the defendant sought to create the impression that this case could be distinguished from the principle promulgated in the case of *Haston* v. *Castner, 4 Stew. Eq. 697*, with respect to voluntary conveyances, but I am entirely unable to find any foundation which has the slightest appearance of solidity upon which to base any reason for the distinction. I think the law as there expressed has been understood by law courts in New Jersey as being a completely satisfactory exposition of it, and that the members of the bar have almost universally so regarded it.

The deed in question should be declared void as to the judgment of the complainants. I will so advise, with costs.